OPINION OF THE COURT
Bellacosa, J.
This case presents the question whether the terms of the *365 1953 Treaty of Friendship, Commerce and Navigation between the United States and Japan require that a nonresident Japanese national claimant must be treated in the same manner as a United States citizen, irrespective of Workers’ Compensation Law § 17. The United States Constitution provides that a duly ratified treaty made by the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding” (US Const art VI). Because we determine that claimant, as a foreign national dependent, is entitled to equal treatment under the Treaty (4 UST 2063) between the United States and Japan, we hold that the one-year support requirement for nonresident alien death benefits in Workers’ Compensation Law § 17 is superseded. The order of the Appellate Division affirming the decision of the Workers’ Compensation Board awarding death benefits to claimant Mizugami should be affirmed.
Keitaro Mizugami, an employee of Sharin West Overseas, Inc., was stabbed to death by an intruder at the company’s headquarters in New York City on August 14, 1985 at 10:00 a.m. Claimant-respondent Keiko Mizugami, the decedent’s mother, filed a workers’ compensation claim for death benefits. The claim was contested by the decedent’s employer.
An Administrative Law Judge ruled that claimant was a dependent parent under the Workers’ Compensation Law and awarded her death benefits. Contending that claimant was not supported by the deceased employee for the statutory period of one year prior to the fatal stabbing, the employer and its insurer sought Workers’ Compensation Board review. Workers’ Compensation Law § 17 imposes a durational requirement of one year of support for a surviving dependent parent who is an alien nonresident of the United States or Canada to qualify for death benefit payments.
The Board affirmed the award, and on appeal, the Appellate Division unanimously affirmed. The Appellate Division "agree[d] with the employer that there was no proof that [the deceased employee] had supported claimant for one year prior to the accident as required by the statute setting forth the preconditions for recovery by nonresident aliens” (Matter of Mizugami v Sharin W. Overseas, 183 AD2d 962, 962-963). That , i°Ul\ ’ however, affirmed the Board’s decision, by ruling that e urational condition which Workers’ Compensation Law *366 § 17 attaches to nonresident alien claims is violative of the equal treatment core of the Treaty between the United States and Japan.
Article III, U 1 of the Treaty provides that "[njationals of either Party shall be accorded national treatment in the application of laws and regulations within the territories of the other Party that establish a pecuniary compensation, or other benefit or service, on account of disease, injury or death arising out of and in the course of employment or due to the nature of employment”. "National treatment” is defined as "treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals * * * of such Party” (Treaty, art XXII, H 1).
The employer and its carrier argue that the phrase "within the territories of the other Party” in article III, 1 of the Treaty should be read to modify "[njationals of either Party” rather than "application of laws and regulations”. The resulting construction would mean, according to appellants’ argument, that the Treaty would prohibit discrimination, i.e., the imposition of the one-year durational prerequisite for benefits, against a Japanese national who is a resident of the United States, but would allow discrete treatment against a claimant, as here, who is a Japanese national, resident in Japan.
In Matter of Iannone v Radory Constr. Corp. (1 NY2d 671), this Court construed a similar Treaty of Friendship, Commerce and Navigation between the United States and the Italian Republic (63 US Stat 2255). That Treaty, ratified in 1949, was of a slightly earlier vintage than the United States-Japan Treaty at issue here. Article XII, H 1 of the Italian Treaty provided: "The nationals of either High Contracting Party, regardless of alienage or place of residence, shall be accorded rights and privileges no less favorable than those accorded to the nationals of the other High Contracting Party, under laws and regulations within the territories of such other High Contracting Party” (quoted in Matter of Iannone v Radory Constr. Corp., 285 App Div 751, 753, affd no opn 1 NY2d 671, supra).
The United States-Italy Treaty uses the modifying phrase "within the territories of such other * * * Party,” which was retained identically in the United States-Japan Treaty at issue on this appeal. Patently, in the Italian Treaty, the key phrase modifies "laws and regulations” and not "nationals of *367 either * * * Party”. To read it otherwise would make the specific stipulation "regardless of * * * place of residence” a meaningless additive. The United States-Japan Treaty retains the phrase "within the territories of the other Party” in-virtually the same context. We discern no justification for reconstruing the significance and operative value of that phrase. Rather, we look to the "ordinary meaning” and "clear import” of the United States-Japan Treaty provision (Santovincenzo v Egan, 284 US 30, 40; Sumitomo Shoji Am. v Avagliano, 457 US 176, 180), and conclude that it modifies "application of laws and regulations.” Thus, when "national treatment” mfist be accorded, as here, it should be done with respect to the application of all laws and regulations effective in the territories of the party required to grant such treatment. The effective translation is that the States of the United States are required to accord "national treatment” equally to foreign nationals and United States citizens in these circumstances.
However, appellants rely heavily on a difference in language that does appear between the Italian Treaty in Iannone and the Japanese Treaty at issue here. The Japanese Treaty replaced the stipulation found in the Italian Treaty that nationals of either party, "regardless of alienage or place of residence, shall be accorded rights and privileges no less favorable than those accorded to the nationals of the other * * * Party”. The substituted stipulation simply states that claimants "shall be accorded national treatment”.
Appellants’ position essentially rises or falls on this change of language. They claim it indicates that equal treatment need not be accorded nonresident foreign national dependents under circumstances such as are present in this case. In support of this contention, they point to historical evidence of disquietude over the erosion of the powers of State Legislatures superimposed by treaties. This concern manifested itself at the time that the language of Friendship, Commerce and Navigation treaties, such as the one with Japan at issue here, was being revised under the auspices of the United States Department of State.
That evidence includes a proposed amendment to article VI of the United States Constitution introduced as a Senate Joint Resolution by Senator Bricker of Ohio in 1952 (see, 98 Cong Rec 907, 908; Senate Jt Res 130, 82d Cong, 2d Sess [1952]). The Bricker amendment, among other features, would have re *368 quired an explicit act or joint resolution of Congress before a treaty or executive agreement could abrogate a United States law or the laws or Constitutions of the States. Regardless of the motivations behind that proposal or similar proposals (see, Sutherland, Restricting the Treaty Power, 65 Harv L Rev 1305, 1325-1326), no amendment to the Supremacy Clause was effected. Furthermore, although appellants point to concerns among State workers’ compensation officials regarding "Federal encroachment” into that domain (142 Labor Dept, Bureau of Labor Standards Bull, at 2 [1950]), there is no evidence that these parochial concerns were translated into the uniform national treaty revisions now before us.
Instead, assurances were given by State Department officials in 1953 during the course of hearings on the Treaty with Japan which indicate that the treaties under consideration would not significantly alter the powers retained by the States under earlier treaties (see, Hearings Before the Subcommittee on Commercial Treaties of the Senate Committee on Foreign Relations, 83d Cong, 1st Sess 4 [1953]; Hearings Before the Subcommittee on Commercial Treaties of the Senate Committee on Foreign Relations, 82d Cong, 2d Sess 16 [1952]). Appellants have not persuasively supported their argument that the asserted language substitution produces the substantive revision of rights and obligations of the magnitude they attribute to it.
Indeed, we conclude that the use of the term "national treatment” can be construed merely as achieving greater brevity with the same substantive meaning and without a significant change in entitlements. Respondent Workers’ Compensation Board points to Jennings v Boeing Co. (660 F Supp 796 [ED Pa 1987], mot for reconsideration denied 677 F Supp 803, affd no opn 838 F2d 1206), in which a United States District Court was required to construe "national treatment” in a tort liability and workers’ compensation provision of a 1950 Friendship, Commerce and Navigation Treaty with Ireland. Like the Japanese Treaty, the Irish Treaty guaranteed nationals of either country "national treatment in the application of laws and regulations within the territories of the other Party” (id., at 800). The Jennings plaintiff was an Irish and British citizen and non-United States resident bringing suit in Pennsylvania. The court found that she was entitled to the same treatment as an American nonresident of Pennsylvania. Applying similar reasoning in this case would confer on claimant the rights of an American nonresident of New York, *369 and she would prevail. Appellants have cited no Federal or State case which gives "national treatment” a different substantive interpretation.
Appellants, on the other hand, point to testimony given by an Assistant Secretary of State in congressional subcommittee hearings on postwar Friendship, Commerce and Navigation treaties regarding the phrase "national treatment”. The State Department official stated that " '[n]ational treatment’ insures that our own nationals or corporations will receive treatment equal to the treatment accorded to the nationals of the country with which we have the treaty” (Hearings Before the Subcommittee on Commercial Treaties of the Senate Committee on Foreign Relations, 82d Cong, 2d Sess 7 [1952]). The official then explained that in speaking of the nationals of the other treaty country, he was referring to nationals in their own countries (id.). We disagree with appellants’ argument that these statements indicate that "national treatment” applies only to resident aliens, because that would make the protection superfluous. Resident aliens in the United States are already guaranteed equal protection by the Constitution. Since treaties generally involve a quid pro quo, it is reasonable to conclude that the United States offered protection to its treaty partners beyond that constitutionally mandated in return for a guarantee of reciprocal additional protection for United States nationals.
We note finally that in the construction of a treaty such as this, "the honor of the government and people of the United States is involved” (Chew Heong v United States, 112 US 536, 540 [1884]). Because the durational qualification provision of Workers’ Compensation Law § 17 conflicts with the parity policy of the "national treatment” provision of the United States-Japan Treaty, it must be put aside. The Treaty mutually and reciprocally secures equality of treatment and benefits for both American and Japanese dependent nationals. The pertinent provision of the Workers’ Compensation Law, as applied to claimant Mizugami, that would preclude her recovery of benefits for the death of her employee son in New York, is superseded by the Treaty.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., and Smith concur.
Order affirmed, with costs.